Opinion issued April 1, 2010









 





In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00840-CV






PRAIRIE VIEW A&M UNIVERSITY, Appellant


V.


DILJIT K. CHATHA, Appellee






On Appeal from the 155th District Court

Waller County, Texas

Trial Court Cause No. 07-11-19090






O P I N I O N


 Appellant, Prairie View A&M University, brings this interlocutory appeal from
an order denying its plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(8) (Vernon 2008) (allowing interlocutory appeal of order that "grants or
denies a plea to the jurisdiction by a governmental unit"). The trial court determined 
appellee, Diljit K. Chatha, timely filed her suit against her employer, the University,
pursuant to the Texas Commission on Human Rights Act ("the Texas Act"), (1) and,
therefore, the court had jurisdiction. In two issues, the University contends the trial
court lacks jurisdiction because (1) Chatha's employment discrimination claims were
untimely filed under the Texas Act and (2) Chatha failed to follow the provisions of
the Texas Act resulting in no waiver of sovereign immunity in this case. We
conclude the trial court properly denied the plea to the jurisdiction. We affirm.Background Chatha teaches English at the University. Chatha, who is of Indian national
origin, began working for the University in 1987. In 2004, Chatha was promoted to
full professor. On September 25, 2006, Chatha filed a complaint with the Equal
Employment Opportunity Commission (EEOC) alleging discrimination on the basis
of race and national origin. The Texas Workforce Commission-Civil Rights Division
issued Chatha a right-to-sue letter and she filed this suit. Chatha alleged she is
underpaid as compared to less qualified faculty members.

 In its plea to the jurisdiction challenging the subject matter jurisdiction of the
court, the University asserted Chatha did not timely file her complaint. Specifically,
the University contends that the adverse action claimed by Chatha occurred in 2004
when she was promoted to full professor at a lower pay rate, which was more than
180 days before the time she filed suit in 2006 under the Texas Act. The University
also claimed that because Chatha did not meet the elements of the Texas Act she
failed to show the State had waived its immunity. Chatha responded that her
complaint was timely filed under the Lilly Ledbetter Fair Pay Act (hereafter called
"the Ledbetter Act"), which amended Title VII of the Civil Rights Act of 1964 to
allow for claims based on her most recent paycheck at a lower rate. Asserting that the
Ledbetter Act is applicable to the Texas Act through the stated policy of the Texas
Act, Chatha contends that her claim was timely and a waiver of the State's immunity
was established.

Applicable Law Concerning Jurisdiction in Employment Action Claim

 A plea to the jurisdiction is a dilatory plea that challenges the trial court's
subject matter jurisdiction. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 225-26 (Tex. 2004). Whether the plaintiff has alleged facts that demonstrate
subject-matter jurisdiction is a question of law, which we review de novo. Id. at 226. 
Although we are not to reach the merits of the plaintiff's case, when the plea to the
jurisdiction challenges the existence of jurisdictional facts, we consider the relevant
evidence submitted by the parties that is necessary to resolve the jurisdictional issue. 
Id. at 227. Where, as here, the evidence is undisputed, the trial court rules on the plea
to the jurisdiction as a matter of law. Id.

 The Texas Act states, "A complaint . . . must be filed not later than the 180th
day after the date the alleged unlawful employment practice occurred." Tex. Lab.
Code Ann. § 21.202 (Vernon 2006); Davis v. Autonation USA Corp., 226 S.W.3d
487, 491 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing Specialty Retailers,
Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996)). "This time limit is
mandatory and jurisdictional." Davis, 226 S.W.3d at 491 (citing Schroeder v. Tex.
Iron Works, Inc., 813 S.W.2d 483, 486 (Tex. 1991)). Failure to timely file an
administrative complaint deprives Texas trial courts of subject-matter jurisdiction. 
Id. (citing Czerwinski v. Univ. of Tex. Health Sci. Ctr., 116 S.W.3d 119, 122 (Tex.
App.--Houston [14th Dist.] 2002, pet. denied); Vincent v. W. Tex. State Univ., 895
S.W.2d 469, 473 (Tex. App.--Amarillo 1995, no writ)).

Timeliness of Filing Complaint of Discrimination

 In its first issue, the University contends (A) under the law before the
enactment of the Ledbetter Act, Chatha's complaint was untimely due to her failure
to file it within 180 days of the date she was informed of the salary of which she now
complains, and (B) the Ledbetter Act is inapplicable to the Texas Act. 

 A. Law Before Enactment of Ledbetter Act

 Before the enactment of the Ledbetter Act, (1) Texas courts looked to federal
courts' interpretation of Title VII to analyze the meaning of the Texas Act, and (2)
federal and Texas courts rejected the continuing violation doctrine in unequal pay
cases. 

 1. Texas Courts Reliance on Federal Interpretation of Title VII

 Although the Texas Act states that a complaint "must be filed not later than the
180th day after the date the alleged unlawful employment practice occurred," it does
not define when an unlawful employment practice occurs. Tex. Lab. Code Ann.
§ 21.202 (Vernon 2006). Before the Ledbetter Act, Title VII was worded similarly
to the Texas Act, stating, "A charge under this section shall be filed within one
hundred and eighty days after the alleged unlawful employment practice
occurred . . ." 42 U.S.C.S § 2000e-5(e)(1) (LexisNexis 2005). 

 Because the Texas Act does not define when an unlawful employment practice
occurs, Texas courts look to the federal courts interpretation of Title VII for guidance
in defining the term. See AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex. 2008)
("[b]y adopting the Act, the Legislature 'intended to correlate state law with federal
law in employment discrimination cases'") (quoting Ysleta Indep. Sch. Dist. v.
Monarrez, 177 S.W.3d 915, 917 (Tex. 2005)). The rationale for looking to the
federal interpretation of Title VII is to comply with the stated purpose in the Texas
Act to "provide for the execution of the policies of Title VII of the Civil Rights Act
of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.)." Tex.
Lab. Code Ann. §21.001(1) (Vernon 2006). 

 2. Inapplicability of Continuing Violation Doctrine

 The continuing violation doctrine applies when an unlawful employment
practice manifests itself over time rather than as a series of discrete acts. See Davis,
226 S.W.3d at 493 (citing Wal-Mart Stores v. Davis, 979 S.W.2d 30, 31 (Tex.
App.--Austin 1998, pet. denied)). Under prior case law applying the continuing
violation doctrine, each paycheck is not a new occurrence, nor is it part of a
continuing violation that would give an employee a new 180-day limitations period. 
See Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 87 (Tex. App.--Fort Worth
2003, pet. denied) (refusing to apply continuing violation theory to separate pay
checks and noting limitations period begins when pay decision is made) (citing
United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S. Ct. 1885, 1889 (1977);
Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998); Hendrix v. City of Yazoo City,
Miss., 911 F.2d 1102, 1103 (5th Cir. 1990)). Under the state and federal law before
the enactment of the Ledbetter Act, therefore, a person filing a claim for an unlawful
employment practice based on allegedly discriminatory compensation had to file the
claim within 180 days of the time of the discriminatory act, which courts held was the
date the employee was informed of the complained of salary. Ledbetter v. Goodyear
Tire & Rubber Co., Inc., 550 U.S. 618, 621, 127 S. Ct. 2162, 2165 (2007) (holding
pay-setting decision is discrete act and commenced limitations for Ledbetter to file
charge with EEOC); Davis, 226 S.W.3d at 491 (quoting Del. State Coll. v. Ricks, 449
U.S. 250, 258, 101 S. Ct. 498, 504 (1980)). Chatha did not file her complaint within
180 days of the time she was notified of the salary decision; her complaint is untimely
unless the Ledbetter Act applies to her case.

 B. Applicability of Ledbetter Act to Texas Act

 Chatha contends (1) the Ledbetter Act changed the law to now allow for claims
based on when a person is affected by the application of the discriminatory act, and
(2) the Ledbetter Act should be applied to the Texas Act because the policy of the
Texas Act is to be consistent with Title VII. 

 1. Ledbetter Act 

 In response to the Ledbetter decision, Congress passed the Ledbetter Act to
abrogate the Supreme Court's decision. Lilly Ledbetter Fair Pay Act of 2009, Pub.
L. 11-2, 123 Stat. 5 (2009). Among other changes, Title VII was amended by adding
the following definition of "occurrence": 

 For purposes of this section, an unlawful employment practice occurs,
with respect to discrimination in compensation in violation of this
subchapter, when a discriminatory compensation decision or other
practice is adopted, when an individual becomes subject to a
discriminatory compensation decision or other practice, or when an
individual is affected by application of a discriminatory compensation
decision or other practice, including each time wages, benefits, or other
compensation is paid, resulting in whole or in part from such a decision
or other practice.


42 U.S.C.S. § 2000e-5(e)(3)(A) (LexisNexis Supp. 2009) (emphasis added). Thus,
the law applicable to Title VII is no longer the Supreme Court's Ledbetter holding
that an unlawful employment practice occurs with respect to discrimination in
compensation when the salary decision is made. See Klebe v. Univ. of Tex. Sys., 649
F. Supp. 2d 568, 569 (W.D. Tex. 2009) (order); Gentry v. Jackson State Univ., 610
F. Supp. 2d 564, 566 (S.D. Miss. 2009); Bush v. Orange County Corrections Dept.,
597 F. Supp. 2d 1293, 1295 (M.D. Fla. 2009). Now, under the Ledbetter Act, an
unlawful employment practice occurs under Title VII when an individual is affected
by application of a discriminatory compensation decision or practice, including each
paycheck resulting from that decision. Lilly Ledbetter Fair Pay Act of 2009, Pub. L.
11-2, 123 Stat. 5 (2009). The Ledbetter Act applies retroactively "as if enacted on
May 28, 2007," and applies to "all claims of discrimination . . . that are pending on
or after that date." Id. If the Ledbetter Act applies to this case, then Chatha's filing
would be timely because she filed her complaint within 180 days of her most recent
paycheck she contends is discriminatory.

 2. Application of Ledbetter Act to Texas Act

 We conclude that the Ledbetter Act's current definition describing when an
unlawful practice occurs in Title VII should be applied to a claim of compensation
discrimination brought under the Texas Act. We reach this conclusion for three
reasons: (a) the express policy of the Texas Act is to execute the policy in Title VII;
(b) federal district courts that have addressed this identical question have reasoned
that the Ledbetter Act applies to the Texas Act; and (c) the University's arguments
stating reasons the Ledbetter Act should not apply are unpersuasive. 

 a. Express Policy of Texas Act

 The Texas Act states that its purpose is to "provide for the execution of the
policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." 
Tex. Lab. Code Ann. § 21.001(1); see Autozone, 272 S.W.3d 592. The State's
public policy in the Texas Act is to execute the policy in Title VII. See Fortis
Benefits v. Cantu, 234 S.W.3d 642, 649 (Tex. 2008) ("'[T]he State's public policy is
reflected in its statutes.'") (quoting Town of Flower Mound v. Stafford Estates Ltd.,
135 S.W.3d 620, 628 (Tex. 2004)). Because the public policy of the Texas Act is to
execute the policy in Title VII, Texas courts look to the federal courts' analysis in
determining when an unlawful practice occurred. Autozone, 272 S.W.3d 592. As we
have explained above, when we have examined federal courts' decisions in the past,
that analysis led to the substantive decision that an unlawful employment practice
occurred under the Texas Act when the decision about salary was made. By applying
that same procedure to examine federal law, the result is now that we must apply the
substantive law in Title VII that provides a new definition for determining when an
unlawful employment practice occurs. See Tex. Lab. Code Ann. § 21.001(1); see
Autozone, 272 S.W.3d at 592.

 b. Analysis of Federal District Courts

 Two federal district courts in Texas have addressed this identical question and
reasoned that Texas courts would apply the Ledbetter Act to the Texas Act. See
Klebe, 649 F. Supp.2d at 570-71; Lohn v. Morgan Stanley DW, Inc., 652 F. Supp.2d
812, 829 (S.D. Tex. 2009) (approving of and following analysis in Klebe). In Klebe,
the court concluded that, to achieve the Texas Act's purpose, a Texas state court
would apply the terms of the Ledbetter Act to a suit under the Texas Act. Klebe, 649
F. Supp.2d at 572. The court reasoned that the Texas Legislature expressly stated the
purpose of the Texas Act was to carry out the policies of Title VII and that Texas
courts routinely look to federal law concerning Title VII for guidance in interpreting
the Texas Act. Id. 


 c. The University's Arguments

 The University suggests that the Ledbetter Act is inapplicable to the Texas Act
because the Texas Act is not intended to be identical to Title VII. Although the Texas
Act and Title VII are not identical, the Supreme Court of Texas has historically
looked to the federal courts' interpretation for determining when an unlawful
employment practice "occurs" because that term is undefined in the Texas Act and
Texas's policy is to execute the policy of Title VII. See AutoZone, 272 S.W.3d at
592; Davis, 226 S.W.3d at 491. Our decision today simply continues to apply that
procedural precedent to interpret this undefined term in the Texas Act. See AutoZone,
272 S.W.3d at 592.

 The University also suggests that the Ledbetter Act is inapplicable to the Texas
Act because the Texas Act does not automatically incorporate amendments to Title
VII. The University cites the Texas Act section dealing with disparate impact cases
involving age discrimination. "To determine the availability of and burden of proof
applicable to a disparate impact case involving age discrimination, the court shall
apply the judicial interpretation of the Age Discrimination in Employment Act of
1967 and its subsequent amendments (29 U.S.C. Section 621 et seq.)." Tex. Lab.
Code Ann. § 21.122(b) (Vernon 2006). The University contends that because the
Texas Act specifies that courts "shall" apply federal cases in disparate impact cases
involving age discrimination, the Legislature must have meant to exclude the
automatic application of federal law to discrimination cases not involving age
discrimination. In support of this, the University relies upon the doctrine of expressio
unius est exlusio alterius or "the expression of one implies the exclusion of others." 
See Mid-Century Ins. Co. of Texas v. Kidd, 997 S.W.2d 265, 273-74 (Tex. 1999). 
The doctrine, however, is an aid to determine legislative intent, not an absolute rule. 
Id. Also, the supreme court has stated that we do not "resort to rules of construction"
unless the statute is ambiguous. In re Estate of Nash, 220 S.W.3d 914, 917 (Tex.
2007). Here, as noted earlier in this opinion, the Legislature's intent--confirmed by
numerous cases from the Texas supreme court and courts of appeals--is that the
Texas Act is intended to execute the policies of Title VII. Thus, we need not resort
to the doctrine of expressio unius est exlusio alterius. See Mid-Century Ins., 997
S.W.2d at 273-74; see also In re Estate of Nash, 220 S.W.3d at 917. 

 The University contends the Ledbetter Act is inapplicable because the Texas
Legislature has not incorporated similar language into the Texas Act. Specifically,
the University contends that shortly after the Ledbetter Act was enacted into law,
Senate Bill 986 was introduced. Tex. S.B. 986, 81st Leg., R.S. (2009). Senate Bill
986 contained language similar to the Ledbetter Act, stating in pertinent part,

 With respect to an allegation of discrimination in payment of
compensation . . ., an unlawful employment practice occurs each time:
. . . an individual is adversely affected by application of a discriminatory
compensation decision or other practice, including each time wages,
benefits, or other compensation affected wholly or partly by such a
decision or other practice is paid.


See Tex. S.B. 986, 81st Leg., R.S. (2009). Senate Bill 986 was referred to the
Business and Commerce Committee, but it never made it beyond the committee. See
Tex. S.B. 986, 81st Leg., R.S. (2009), bill history, available at
http://www.capitol.state.tx.us/BillLookup/Actions.aspx?LegSess=81R&Bill=SB986. 
The University invites us to speculate on the reasons the bill did not pass and become
part of the Act, stating, among other possibilities, that "perhaps the Legislature
intends to wait and see how the Ledbetter Act's provisions are interpreted by the
courts before deciding whether to adopt a similar provision and determining how it
should be crafted." However, the Texas supreme court has stated, "we attach no
controlling significance to the Legislature's failure to enact [legislation]." Entergy
Gulf States, Inc. v. Summers, 282 S.W.3d 433, 443 (Tex. 2009) (quoting Tex.
Employment Comm'n v. Holberg, 440 S.W.2d 38, 42 (Tex. 1969)). We therefore
decline to engage in the speculation encouraged by the University.

 Applying the definition of "occurrence" from Title VII to the Texas Act, the
alleged unlawful employment practice at issue is not limited to the pay decision made
in 2004 and includes the time when Chatha was affected by the decision in her most
recent paycheck. See 42 U.S.C.S. § 2000e-5(e)(3)(A); Lohn, 652 F. Supp. 2d at 829;
Klebe, 649 F. Supp. 2d at 568. We, therefore, hold the trial court properly denied the
University's plea to the jurisdiction on that ground. 

 We overrule the University's first issue.

 Having determined that Chatha's pleadings met the requirements for a claim
under the Texas Act, we overrule the University's second issue that alleges the trial
court erred by granting the University's plea to the jurisdiction because the
Legislature's waiver of sovereign immunity applies only where "the procedures
outlined in the statute [waiving immunity] have been met." The University contends
an ambiguity in the Texas Act should be resolved in favor of a finding that the
Legislature did not waive the University's immunity. However, the Texas supreme
court held the Texas Act contains an unambiguous waiver of immunity. See Mission
Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 660 (Tex. 2008) ("All the courts
of appeals that have considered it have concluded that the [Texas Act] clearly and
unambiguously waives immunity, and we agree.").

Conclusion

 We affirm the order of the trial court.



 

 Elsa Alcala

 Justice

 

Panel consists of Chief Justice Radack and Justices Alcala and Higley.
1. Tex. Lab. Code Ann. §§ 21.001-.556 (Vernon 2006).