02-10-052-CV
















 

 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00052-CV

 

 


 
 
 TARRANT REGIONAL WATER DISTRICT
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 TAMARA VILLANUEVA
 
 
  
 
 
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM THE 342ND DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

OPINION

 

------------

I.  Introduction

 

In
two issues, Appellant Tarrant Regional Water District (Tarrant) appeals the
denial of its partial plea to the jurisdiction, asking this court to determine
whether Chapter 21[1] of the
Texas Labor Code should be read to automatically incorporate the provisions of
the federal Lilly Ledbetter Fair Pay Act of 2009 (the Ledbetter Act).[2]  We reverse and remand.

II.  Factual and Procedural History

          Appellee Tamara Villanueva sued
Tarrant, her former employer, for gender-based employment discrimination and
retaliation under sections 21.051 and 21.055 of the Texas Labor Code.  See
Tex. Lab. Code Ann. §§ 21.051, 21.055 (Vernon 2006).  Tarrant filed a partial plea to the
jurisdiction on Villanueva’s gender-based discrimination claim, arguing that
Villanueva failed to timely file her administrative complaint with the Texas
Workforce Commission Civil Rights Division (TWCCRD).  The trial court denied Tarrant’s partial plea
to the jurisdiction, and this interlocutory appeal followed.  See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)
(Vernon 2008). 

III.  Plea to the Jurisdiction

A. 
Standard of Review

A
plea to the jurisdiction is a dilatory plea used to defeat a cause of action
without regard to whether the claims asserted have merit.  Tarrant
County v. McQuary, 310 S.W.3d
170, 172 (Tex. App.—Fort Worth 2010, pet. denied) (citing Bland Indep. Sch. Dist. v.
Blue, 34 S.W.3d 547,
554 (Tex. 2000)).  The plea
challenges the trial court’s subject matter jurisdiction.  Id.  Whether the trial court has subject matter
jurisdiction is a question of law that we review de novo.  Id.
(citing Tex. Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d
849, 855 (Tex. 2002)).

The
plaintiff has the burden of alleging facts that affirmatively establish the
trial court’s subject matter jurisdiction.  Id.
at 173 (citing Tex. Ass’n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993)).  We construe the
pleadings liberally in the plaintiff’s favor, look to the pleader’s intent, and
accept the pleadings’ factual allegations as true.  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  The pleadings relevant to a review of a plea
to the jurisdiction include the live petition, the plea to the jurisdiction,
and the response to the plea to the jurisdiction.  Tarrant
County, 310 S.W.3d at 173.


B. 
Petition, Plea, and Response

          1.  Villanueva’s Petition

          Villanueva made the following
allegations in her petition:  She started
working for Tarrant as a buyer in its purchasing department in 2000.  Tarrant promoted her to a senior buyer in
2005, but it terminated her employment in July 2006.  In August 2006, Tarrant assigned David Owen to
be a senior buyer in the purchasing department. 
Owen became Villanueva’s supervisor when Tarrant rehired her in October
2006 as a contract administrator.  Upon
her rehiring, Villanueva trained Owen to perform the senior buyer
responsibilities that she used to have, and she continued to perform the duties
of a senior buyer. 

Owen’s initial annual salary was
$45,000, but after a three percent raise in February 2007 and an additional
salary increase in August 2007, his annual salary as of October 2008 amounted
to $52,500.  For performing the same
functions as Owen, even though her title was “contract administrator,”
Villanueva earned an annual salary of approximately $40,000.  Although she requested a five percent raise in September 2007, she received a four percent raise
in October 2007, increasing her annual salary to $41,600. 

          In November 2007, Villanueva
complained to her general manager about gender-based pay discrimination.  Her complaint led to her removal from a major
project, to removal of her most important job duties, and to her assignment to
basic clerical tasks.  Villanueva also continued
to perform buyer duties, although Owen took credit for her work. 

          In March 2008, Tarrant reassigned
Villanueva to a Buyer II position and required her to perform manual labor in a
warehouse.  On May 25, 2008, due to her
poor physical condition, she requested reinstatement as a contract
administrator.  Tarrant discharged her
that day. 

          On August 15, 2008—within 180 days of
receiving her last paycheck—Villanueva filed an employment discrimination charge
against Tarrant with the federal Equal Employment Opportunity Commission (EEOC) and with TWCCRD. On April
21, 2009, TWCCRD issued notice of Villanueva’s right
to file a civil action, and Villanueva filed the instant suit on May 7, 2009. 

 

2. 
Tarrant’s Plea to the Jurisdiction

Tarrant
did not dispute the May 2008 discharge date or the dates on which Villanueva
filed the discrimination charge with the EEOC and TWCCRD or this lawsuit.  However, it disputed that the trial court had
jurisdiction over Villanueva’s pay discrimination claim because she failed to
file her administrative complaint within the required 180-day period after
Tarrant committed the alleged unlawful employment practice. 

          Further, Tarrant alleged that when it
denied Villanueva’s request for a five percent raise and instead gave her a
four percent raise, Villanueva hired an attorney who threatened Tarrant with a
lawsuit for gender-based pay discrimination in a letter dated November 8, 2007.
 Tarrant attached to its plea to the
jurisdiction a portion of Villanueva’s deposition in which she agreed that in
October 2007, when she did not receive the five percent raise to which she felt
entitled, she felt that she was being discriminated against on the basis of her
gender.  Villanueva also admitted that in
September 2007, after being informed that she would not receive a five percent
raise, she started emailing portions of Tarrant’s employment policies from her
work email account to her personal email account because she was thinking about
a lawsuit. 

          3.  Villanueva’s Response

          In her response to Tarrant’s plea,
Villanueva argued that recent legislation and case law had “clarified and
settled all issues surrounding the timeliness of discrimination charges based
on unfair compensation.”  Specifically,
she contended that the Ledbetter Act, which Congress passed in January 2009 and
which amended Title VII of the Civil Rights Act of 1964, applied to make her
claim timely. 

C. 
Chapter 21 and the Lilly Ledbetter Fair Pay Act

          1.  Statutory Construction

          We review statutory construction de
novo, and in construing statutes, we ascertain and give effect to the
legislature’s intent as expressed by the statute’s language.  City of Rockwall v. Hughes, 246 S.W.3d
621, 625 (Tex. 2008).  We use
definitions prescribed by the legislature and any technical or particular
meaning the words have acquired.  Id. (citing Tex. Gov’t
Code Ann. § 311.011(b) (Vernon 2005)); see
also Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437
(Tex. 2009) (op. on reh’g) (“Where text is clear,
text is determinative of [the legislature’s] intent.”).  Furthermore, we consider the object sought to
be attained, the circumstances under which the statute was enacted, its
legislative history, and common law or former statutory provisions, including
laws on the same or similar subjects, among other factors.  See
Tex. Gov’t Code Ann. § 311.023 (Vernon 2005).  In interpreting a statute, a court “shall
diligently attempt to ascertain legislative intent and shall consider at all
times the old law, the evil, and the remedy.” 
Id. §
312.005 (Vernon 2005).  And “[u]nless expressly provided otherwise, a reference to any
portion of a statute, rule, or regulation applies to all reenactments,
revisions, or amendments of the statute, rule, or regulation.”  Id. § 312.008 (Vernon 2005).  Finally, we must read the statute as a whole and not just isolated portions. Tex. Dep’t of Transp. v. City of Sunset
Valley, 146 S.W.3d 637, 642 (Tex. 2004); Boenig v. StarnAir, Inc.,
283 S.W.3d 444, 447 (Tex. App.—Fort Worth 2009, no
pet.); see also Nauslar
v. Coors Brewing Co., 170 S.W.3d 242, 253 (Tex. App.—Dallas
2005, no pet.) (“We determine legislative intent from the entire act and not
just its isolated portions.”). 

          2.  Chapter 21

          Chapter 21 “establishes a
‘comprehensive administrative review system,’ under which the ‘exhaustion of
administrative remedies is a mandatory prerequisite to filing a civil action
alleging violations of the [T]CHRA.’”  Hoffmann-La
Roche Inc. v. Zeltwanger, 144 S.W.3d
438, 446 (Tex. 2004) (citing Schroeder v.
Tex. Iron Works, Inc., 813 S.W.2d 483, 485, 486
(Tex. 1991), overruled in part on other
grounds by In re United Servs. Auto. Ass’n, 307 S.W.3d 299, 310 (Tex. 2010)).[3]  Chapter 21 “was enacted to address the
specific evil of discrimination and retaliation in the workplace.”  City of
Waco, 259 S.W.3d at 153.  As it is modeled after federal law, with the
purpose of executing the policies set forth in Title VII, “federal case law may
be cited as authority in cases relating to the Texas Act.”  Hoffmann-La
Roche Inc., 144 S.W.3d at 445–46; see also Tex. Lab. Code Ann. § 21.001(1);
Autozone, Inc. v. Reyes, 272 S.W.3d
588, 592 (Tex. 2008) (“By adopting the Act, the Legislature ‘intended to correlate
state law with federal law in employment discrimination cases.’”).  But see
Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 474 (Tex. 2001) (“The relevant parts of the TCHRA are patterned after Title VII . . . [t]hus, we would ordinarily look to federal precedents for
interpretative guidance to meet the legislative mandate . . . [;] [h]owever, because the federal courts are closely divided on
the issue, we follow the plain meaning of Texas Labor Code section 21.125.”).  

There
are two main provisions of Chapter 21 at issue here.  Section 21.001 states that there are eight
general purposes of Chapter 21, including to “provide for the execution of the
policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.”  Tex. Lab. Code Ann. §
21.001(1).  Section 21.202(a)
provides that a complaint must be filed “not later than the 180th day after the
date the alleged unlawful employment practice occurred.”  Id. § 21.202(a).

a.   
“Occurred”

Whether
the trial court should have granted Tarrant’s partial plea to the jurisdiction
hinges on how we construe the term “occurred” in labor code section 21.202.  See id.  

Chapter
21 of the Texas Labor Code does not define “occurred.”  See id.
§ 21.002 (Vernon 2006).  Texas courts,
relying on federal court interpretations of Title VII, have defined “occurred”
as when the employee is informed of the allegedly discriminatory employment
decision.  See Specialty Retailers, Inc.
v. DeMoranville, 933 S.W.2d
490, 492–93 (Tex. 1996) (“Because one purpose of the Commission on Human Rights
Act is to bring Texas law in line with federal laws addressing discrimination,
federal case law may be cited as authority.”); Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 83 (Tex. App.—Fort Worth 2003, pet. denied).  Our state case law has determined that each
paycheck is not a new occurrence of discrimination or part of a continuing
violation that would give an employee a new 180-day limitations period at the
issuance of each paycheck. See Cooper-Day, 121 S.W.3d
at 84 (“Pay discrimination does not continue to occur until the last allegedly
discriminatory paycheck is received unless the employer has implemented a
facially invalid payment system and continues to pay under that system or the
unequal pay is part of, or a repetition of, a past employment violation.”).

Prior
to 2009, like labor code section 21.202(a), 42 U.S.C.A.
§ 2000e-5(e)(1) (West 2003) stated, “A charge
under this section shall be filed within one hundred and eighty days after the
alleged unlawful employment practice occurred,” but it did not define
“occurred” in the context of discrimination in compensation.  Civil Rights Act of 1991, ch.
22, § 107, 105 Stat. 1071 (1991) (current version at 42 U.S.C.A.
§ 2000e-5(e)(1)(3)(A) (West
Supp. 2010)).  And, like our state case
law, federal case law required that a person file his or her claim based on discriminatory
compensation within 180 days of the time of the discriminatory act; that is,
within 180 days of the date the employee was informed of the complained-of
salary change.  Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 621, 628–29,
127 S. Ct. 2162, 2165, 2169 (2007) (explaining that “Ledbetter should have
filed an EEOC charge within 180 days after each
allegedly discriminatory pay decision
was made and communicated to her,” and that because she did not do so, “the
paychecks that were issued to her during the 180 days prior to the filing of
her EEOC charge do not provide a basis for overcoming
that prior failure” (emphasis added)). 
The Supreme Court’s underlying rationale was essentially to avoid the
imposition of strict liability on employers for routine, administrative acts;
that is, only the initial pay decision was discriminatory—the issuance of
paychecks based on that initial decision were not.[4]  Id.
at 629–30, 127 S. Ct. at 2170 (“The EEOC filing
deadline ‘protect[s] employers from the burden of defending claims arising from
employment decisions that are long past.’” (internal
citation omitted)).

However,
as amended by the Ledbetter Act, 42 U.S.C.A. § 2000e-5(e)(3)(A) defines “occurs”
as:  

when a
discriminatory compensation decision or other practice is adopted, when an
individual becomes subject to a discriminatory compensation decision or other
practice, or when an individual is
affected by application of a discriminatory compensation decision or other
practice, including each time wages, benefits, or other compensation is paid,
resulting in whole or in part from such a decision or other practice.  

 

42
U.S.C.A. § 2000e-5(e)(3)(A) (emphasis added). 
That is, responding to the Supreme Court’s 2007 ruling that each
issuance of a paycheck did not result in a continuing discriminatory violation,
Congress codified the “continuing violation” doctrine in subsection (3)(A).  See Prairie View A
& M Univ. v. Chatha, 317 S.W.3d
402, 406–07 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (comparing
amendment to decision in Ledbetter,
550 U.S. at 621, 127 S. Ct. at 2165); see
also Cooper-Day, 121 S.W.3d at 86–87 (explaining “continuing violation” theory).  The Ledbetter Act applies retroactively to
all Title VII claims of discrimination pending on or after May 28, 2007.  See Chatha, 317 S.W.3d
at 407 (citing the Ledbetter Act). 
Therefore, if the provisions of the Ledbetter Act have been
automatically incorporated into Chapter 21, then the trial court had
jurisdiction over Villanueva’s claim. 

b.  
 Amendment Versus Automatic Incorporation

Tarrant
contends that absent an express amendment to Chapter 21, the Ledbetter Act does
not apply to Texas state discrimination law.  Specifically, Tarrant complains, 

[T]he Texas
Supreme Court has never held that a provision of the federal law with no
express analogue in the state statute must be incorporated by reference into
the TCHRA simply because it is contained in the
federal statute.  Instead, the supreme court has relied on federal court and federal
administrative interpretations of Title VII as guidance where the TCHRA provision before it is mirrored by a provision in
Title VII.

 

Tarrant
argues that because Title VII and Chapter 21 are no longer identical, the
federal statutory language defining “occurred” in the Ledbetter Act does not
and will not apply unless the legislature amends Chapter 21 to include it.  

          Only one other Texas court has
addressed whether the Ledbetter Act’s provisions are automatically incorporated
into Chapter 21.  See Chatha, 317 S.W.3d at 407–09.  In Chatha, a professor received a promotion in 2004 but did not
file her EEOC complaint alleging paycheck
discrimination until 2006.  Id. at 404–05.  The university filed a plea to the
jurisdiction, asserting that Chatha failed to timely
file her complaint because she filed it more than 180 days after her 2004
promotion.  Id.  The court reasoned that the
Ledbetter Act’s definition describing when an unlawful practice occurs in Title
VII should be applied to the Chapter 21 claim because (1) Chapter 21’s express policy is to execute Title VII’s
policies, (2) two federal district courts in Texas have held that Texas courts
would apply the Ledbetter Act to Chapter 21 and Texas courts look to the
federal courts’ interpretation of Title VII for guidance in defining terms, and
(3) the university’s arguments to the contrary were unpersuasive.[5]  Id. at 405, 407–09. 

          The Chatha court relied in part on
two federal district court opinions, Klebe v. University of
Texas System (Klebe II), 649 F. Supp. 2d 568 (W.D. Tex. 2009), and Lohn v. Morgan Stanley DW,
Inc., 652 F. Supp. 2d 812 (S.D. Tex. 2009).  Id. at 408–09.  In Klebe II, the federal district court
concluded that the Austin Court of Appeals erred in Klebe v. University of Texas System (Klebe I),
No. 03-05-00527-CV, 2007 WL 2214344 (Tex. App.—Austin July 31, 2007, no pet.) (mem. op.), by relying on Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490,
492 (Tex. 1996), to support its conclusion that the limitation period began to
run when the employee was informed of the allegedly discriminatory employment
decision.  Klebe II, 649 F. Supp. 2d at 570; see Klebe I, 2007 WL 2214344, at *3.  The Texas Supreme Court in Specialty Retailers, in turn, relied on Delaware State College v. Ricks, 449
U.S. 250, 258, 101 S. Ct. 498, 504 (1980), Ledbetter’s
predecessor, in stating that the limitations period begins when the employee is
informed of the allegedly discriminatory employment decision, not when that
decision comes to fruition.  Specialty Retailers, 933 S.W.2d at 492–93; see
Ledbetter, 550 U.S. at 626, 127 S.
Ct. at 2168 (discussing Ricks).  

The
Klebe II court held that “it seems evident
that Texas courts would look to the Ledbetter Act, which amended Title VII, in
deciding when a discrimination claim under TCHRA
accrues” because the Austin court looked to federal precedent (via Texas
Supreme Court precedent) in Klebe I, and
because of the language of section 21.001(1) with regard to the statute’s express
purpose.  Klebe II, 649 F. Supp. 2d at 570–71. 
In Lohn,
faced with an argument very similar to Tarrant’s,[6] the
federal district court agreed with the Klebe II court’s reasoning.  See Lohn, 652 F. Supp. 2d at 829.

To
the contrary, we agree with Tarrant. 
While it is true that the “general purposes” of Chapter 21 are to
“provide for the execution of the policies of Title VII . . . and its subsequent amendments,” nothing
in the plain language of section 21.001 states that the statute automatically incorporates Title VII’s subsequent amendments into itself.  See
Tex. Lab. Code Ann. § 21.001(1) (emphasis added).  Nor does section 21.202 include any automatic
incorporation language.  See id. § 21.202.  And although section 312.008 of the government
code mandates that a reference to any portion of a statute, rule, or regulation
applies to all amendments of the statute, rule, or regulation, section 21.001
does not directly refer to a “statute, rule, or regulation.”  Cf. Tex. Gov’t Code Ann. § 312.008.  Rather, section 21.001 makes express
reference to the policies underlying Title
VII and its subsequent amendments. 

The
Ledbetter Act did not change Title VII’s
policies:  To assure equality of
employment opportunities; to eliminate those discriminatory practices and
devices that have fostered job environments stratified on the basis of race,
color, religion, sex, or national origin; and to provide “make-whole relief” via
exhaustion of administrative remedies before judicial review of administrative
action to those who have actually suffered from illegal discrimination.  See Ricci
v. DeStefano, 129 S. Ct. 2658, 2672 (2009)
(discussing disparate impact); Int’l
Union v, Johnson Controls, Inc., 499 
U.S. 187, 210, 111 S. Ct. 1196, 1209 (1991) (discussing sex
discrimination); Firefighters Local Union
No. 1784 v. Stotts, 467 U.S. 561, 580, 104 S. Ct.
2576, 2588–89 (1984) (discussing “make-whole” relief); Int’l Bhd. of Teamsters v. U.S., 431 U.S. 324, 348, 97 S. Ct.
1843, 1861 (1977) (discussing racial discrimination); Waffle House, Inc. v. Williams, 313 S.W.3d
796, 805 (Tex. 2010) (stating that Title VII’s
policies “include administrative procedures involving informal conference,
conciliation and persuasion, as well as judicial review of administrative
action”).  Therefore, as currently
written, Chapter 21 continues to provide for the execution of Title VII’s policies, albeit on a timetable different from the
one now followed under the federal statute.[7]  But differences between Title VII and Chapter
21 are not unusual.  Compare 42 U.S.C.A. § 2000e-5(f)(1)
(setting out a ninety-day period to file a civil action in an employment
discrimination suit after receiving notice of the right to file a civil action),
with Tex. Lab. Code Ann. § 21.254
(Vernon 2006) (setting out a sixty-day period to file a civil action in an
employment discrimination suit after receiving notice of the right to file a
civil action), and compare 42 U.S.C.A. § 2000e-5(g)(1)
(stating that if the court finds that a respondent has intentionally engaged in
an unlawful employment practice and orders back pay, interim earnings or
amounts earnable with reasonable diligence by the person discriminated against
shall operate to reduce otherwise allowable back pay), with Tex. Lab. Code Ann. § 21.258 (Vernon 2006)
(stating that workers’ compensation benefits and unemployment compensation
benefits, as well as interim earnings, operate to reduce the back pay otherwise
allowable).   

Furthermore,
when Congress has amended provisions of the Americans with Disabilities Act
(ADA), our legislature has amended Chapter 21 to contain similar language when
it wanted to incorporate the federal amendments.[8]  See,
e.g., Little v. Tex. Dep’t of Criminal Justice, 148 S.W.3d
374, 376–78 (Tex. 2004) (setting out Chapter 21’s
history and noting that, in 1989, the legislature purposely adopted federal
statutory language with regard to the definition of disability and, in 1993, the
legislature amended TCHRA—Chapter 21’s
predecessor—to bring it into compliance with the Civil Rights Act of 1991 and
the ADA).  

While
we are guided by analogous federal statutes and the cases interpreting them, we
see no reason to write automatic incorporation language into Chapter 21 when our
legislature has shown that it knows how to amend the chapter when it wants to
include specific federal provisions.  See id.; see also Arismendez v. Nightingale Home
Health Care, Inc., 493 F.3d 602, 607 (5th Cir.
2007) (noting an additional difference between Chapter 21 and Title VII with
regard to the required proof of an employer’s motivation for an unlawful
employment practice); Harris County Hosp.
Dist. v. Tomball Reg’l Hosp., 283 S.W.3d 838, 847 (Tex. 2009) (“The judiciary’s task is not
to refine legislative choices . . . [it] is to interpret legislation as it is
written.”).  Therefore, we sustain
Tarrant’s first issue.

c.     “Occurred”
Under Pre-Ledbetter Act State Law

Because
we conclude that our state statute does not automatically incorporate the
provisions of the Ledbetter Act, we continue to follow the existing body of
Texas law interpreting “occurred” under Chapter 21:  The 180-day limitations period for an
employment discrimination complaint under Chapter 21 begins when the employee
is informed of the allegedly discriminatory employment decision, not when that
decision comes to fruition.  See Cooper-Day, 121 S.W.3d at 83 (citing Specialty Retailers, 933 S.W.2d at 493). 
Because it is apparent from the record that Villanueva was aware of the
allegedly discriminatory employment decision more than 180 days before she
filed her complaint, her complaint was untimely.  We sustain Tarrant’s second issue.

IV.  Conclusion

Having
sustained both of Tarrant’s issues, we reverse the trial court’s denial of
Tarrant’s partial plea to the jurisdiction and remand this case for further
proceedings.

 

                                                                   
 
 
 
 
 
 
 
 
 BOB MCCOY

                                                                             
 
 
 JUSTICE

 

PANEL:  
 
 
 
 
 
 
 WALKER, 
 
 
 
 
 
 MCCOY, and 
 
 
 
 
 
 MEIER, JJ.         

 

DELIVERED:  December 23, 2010











[1]Formerly the Texas Commission on Human Rights Act (TCHRA).  See Act of June 25, 1983, 68th Leg., 1st
C.S., ch. 7, 1983 Tex. Gen.
Laws 37, 37–57, recodified by Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987,
991–1004 (current version at Tex. Lab. Code Ann. §§ 21.001–.306 (Vernon 2006 & Supp. 2010).





[2]Pub. L. 111-2, § 3,
123 Stat. 5 (2009). 





[3]In
In re United Services Automobile Ass’n, the Texas Supreme Court held that the two-year
period for filing suit under labor code section 21.256 is mandatory but not
jurisdictional, overruling Schroeder
to the extent it held otherwise.  In re United Servs.
Auto. Ass’n, 307 S.W.3d at 310. 
The court did not address Schroeder’s
other holding—that failure to file a complaint and to pursue administrative
remedies within the 180-day time frame creates a jurisdictional bar.  See id.;
Schroeder, 813 S.W.2d at 488; see also City
of Waco v. Lopez, 259 S.W.3d 147, 154 (Tex. 2008) (stating
that noncompliance with Chapter 21’s unique and
comprehensive provisions for external administrative review, alternative
dispute resolution, and exhaustion of administrative remedies “are designed to
favor conciliation over litigation, and noncompliance deprives courts of
subject-matter jurisdiction”); Lueck v. State,
No. 03-07-00497-CV, 2010 WL 2789543, at *8 (Tex. App.—Austin July 16, 2010, no
pet.) (stating that the supreme court’s reasons for
continuing to characterize Chapter 21 as a statutory scheme that requires
exhaustion of administrative remedies “are as valid today as they were when Schroeder was decided”).  Under Chapter 21’s
statutory scheme, “a late filing of an administrative complaint has exactly the
same effect as no filing at all, because an untimely complaint is not routed
through the administrative process as the legislature intended it to be.”  Lueck,
2010 WL 2789543, at *8.





[4]The
Supreme Court stated:

Ledbetter’s attempt to take the intent associated with
the prior pay decisions and shift it to the 1998 pay decision is unsound.  It would shift intent from one act (the act
that consummates the discriminatory employment practice) to a later act that
was not performed with bias or discriminatory motive.  The effect of this shift would be to impose
liability in the absence of the requisite intent.

Id. at 629, 127 S. Ct. at 2170.





[5]The
university argued that Chapter 21 is not intended to be identical to Title VII,
that it does not automatically incorporate amendments to Title VII, and that
the bill sponsored in the Texas legislature after the Ledbetter Act was signed
into law, which would have incorporated language similar to the Ledbetter Act,
never made it beyond the business and commerce committee.  Id. at 408–09.  The
court acknowledged that while Chapter 21 and Title VII are not identical, the
Texas Supreme Court has historically looked to the federal courts’
interpretation for determining when an unlawful employment practice occurs
because Chapter 21 does not define that term and because Chapter 21’s policy is to execute Title VII’s
policies.  Id. at 408.  The court refused to “resort to rules of
construction” or to speculate about why the Texas bill did not pass.  Id. at 408–09. 





[6]The
defendant employer in Lohn
argued that the Ledbetter Act, “which explicitly amended Title VII of the Civil
Rights Act, did not automatically amend the TCHRA and
that, until the Texas legislature passes an analogous statute, it would be
legally erroneous to apply the [Ledbetter Act] to the TCHRA.”  652 F. Supp. 2d at 828. 





[7]In
short, to us, this appears to be more like a procedural rather than substantive
issue.  See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,
130 S. Ct. 1431, 1442 (2010) (noting that the Court has long held that
procedural rules are those that regulate “the judicial process for enforcing
rights and duties recognized by substantive law and for justly administering
remedy and redress for disregard or infraction of them” (internal citation
omitted)); Baker Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d
1, 4 (Tex. 1999) (“Statutes of limitations are procedural.”).  But cf.
Intevep, S.A. Research & Tech. Support
Establishment v. Sena, 41 S.W.3d
391, 394 (Tex. App.—Dallas 2001, no pet.) (noting that
when a statute creates a right of action and incorporates an express limitation
upon the time within which suit may be brought, the statute of limitations is
considered substantive).





[8]Another
of labor code section 21.001’s “general purposes” is
to “provide for the execution of the policies embodied in Title I of the
Americans with Disabilities Act of 1990 and its subsequent amendments.”  Tex. Lab. Code Ann. § 21.001(3).