

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-09-306-CV

TARRANT COUNTY, TEXAS                                          APPELLANT

V.

DEBORAH L. MCQUARY                                              APPELLEE

------------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I.  Introduction

In one issue, Appellant Tarrant County, Texas, brings this interlocutory appeal, asserting that the trial court erred by denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008).  We reverse and render.

## II. Background

Appellee Deborah L. McQuary sued Tarrant County, alleging that it had terminated her employment in violation of the Texas Whistleblower Act. *See* Tex. Gov't Code Ann. §§ 554.001–.010 (Vernon 2004). In its plea to the jurisdiction, Tarrant County argued that McQuary failed to satisfy government code section 554.006's jurisdictional prerequisites when she failed to provide any notice that she was alleging retaliation for whistleblowing during the administrative appeal of her termination. The trial court denied Tarrant County's plea to the jurisdiction, and this interlocutory appeal followed.

### III. Plea to the Jurisdiction

#### A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 101 (Tex. App.—Fort Worth 2008, pet. denied). The plea challenges the trial court's subject matter jurisdiction. *Bland*, 34 S.W.3d at 554. Whether the trial court had subject matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

2

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Shilling*, 266 S.W.3d at 101. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, as in this case, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Bland*, 34 S.W.3d at 555. The pleadings relevant to a review of a plea to the jurisdiction include amended petitions, the plea to the jurisdiction, and responses filed in connection with a defendant's plea to the jurisdiction. *City of Austin v. Ender*, 30 S.W.3d 590, 593 (Tex. App.—Austin 2000, no pet.).

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *Shilling*, 266 S.W.3d at 101; *see also* Tex. R. Civ. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Shilling*, 266 S.W.3d at 101 (citing *Miranda*, 133 S.W.3d at 228). The plaintiff is then required to show that there is a disputed material fact regarding the

3

jurisdictional issue. *Id.* If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*.

## B. Statutory Scheme

The Whistleblower Act has a twofold purpose: (1) protecting a public employee from retaliation by her employer when, in good faith, the employee reports a violation of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of public bodies. *Ender*, 30 S.W.3d at 594; *see also* Tex. Gov't Code Ann. § 554.002(a) ("A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.").

The applicable portion of the government code states, "A public employee must *initiate action* under the grievance or appeal procedures of the employing state or local governmental entity *relating to suspension or termination of employment or adverse personnel action* before suing under this chapter." Tex. Gov't Code Ann. § 554.006(a) (emphasis added). "Section 554.006 does not

4

require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have 60 days in which to render a final decision." *Univ. of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005); *see also Shilling*, 266 S.W.3d at 102 ("The requirement that an employee 'initiate' grievance procedures before filing suit is to afford the employer an opportunity to correct its errors by resolving disputes before litigation."). *Compare Aguilar v. Socorro Indep. Sch. Dist.*, 296 S.W.3d 785, 789 (Tex. App.—El Paso 2009, no pet.) (stating that, in light of section 554.006(d), the change in statutory language from "exhaust" to "initiate" in section 554.006(a) has no effect on the implementation of the statute), *with Med. Arts Hosp. v. Robison*, 216 S.W.3d 38, 43–44 (Tex. App.—Eastland 2006, no pet.) (stating that the change from "exhaust" to "initiate" promotes a more liberal construction of the act by focusing less on whether the employee has complied with all of the procedural requirements of a grievance and asking instead if the governmental entity received the required notice).

As presented both in briefing and oral argument before this court, the questions in this appeal are: (1) Was McQuary required, in initiating action under the grievance procedure, to put Tarrant County on notice that she was asserting a Whistleblower Act claim? (2) If she was so required, did she give

5

such notice?  (3) And if she was so required and no such notice was given, was she wrongfully prevented from providing such notice?

We answer the first question in the affirmative, holding that, as a prerequisite to bringing a Whistleblower Act claim, a government employee must provide reasonable notice that she is making a Whistleblower Act claim in the initiation of the grievance or appeal procedures related to the suspension or termination of employment or adverse personnel action.  We answer the second two questions in the negative.

## C.  Matters Considered

In December 2005, the Tarrant County Sheriff's Office hired McQuary, a registered nurse, as its first "Jail Medical Liaison."  Executive Chief Deputy Bob Knowles was McQuary's direct supervisor.  In June 2006, at the end of McQuary's 180-day probationary period, Sheriff Dee Anderson terminated McQuary's employment.

McQuary filed suit against Tarrant County, alleging that she had been terminated in retaliation for reporting violations of law.  Specifically, McQuary claimed:

> Within one week of employment, [she] began being subjected to a hostile environment anytime she expressed or voiced any concerns regarding patient rights, health concerns regarding the inmates, or the failure to follow state or federal law.  On or about December 29, 2005, [she] approached her supervisor regarding [a]

6

letter she wanted to send to the Sheriff. The letters were a summary of her visits with staff regarding policy and procedures for the medical records (including HIPPA violations) and recommended training for staff regarding same. On December 30, 2005, [she] again spoke with her supervisor about corresponding with [the] Sheriff about other legal violations regarding TB testing and reading and the Standing Order and Protocols for treating inmates. Her supervisor's response was to tell her she was "making Dr. Byrd mad" and deny her access to JPS Policies and Procedures and her own job description. He also stated, "We must be careful what we write and how we write it and what goes to the Sheriff." These actions began a pattern of [McQuary] disclosing problem areas and violations of law, as well as recommendations for resolutions, only to be . . . treated poorly by Dr. Byrd and ordered by her supervisor to ignore legal violations and problem areas.

In good faith, [she] reported violations of federal and state law by JPS and the Sheriff's Office regarding medical treatment, services and practices to Executive Chief Deputy Sheriff Bob Knowles. . . . In good faith, [she] believed that Deputy Knowles, as a member of the Sheriff's Office, had the authority to regulate under or enforce the laws alleged to have been violated, or to investigate or prosecute a violation of criminal law. [She] was led to believe that her concerns regarding illegal activities were being forwarded to the Sheriff. [Her] supervisor was deliberately indifferent to [her] disclosures of these legal violations and made a conscious choice not to act or investigate the violations, and prevented [her] from taking any actions on her own to resolve the violations of law, or [to] inform and seek assistance [from] anyone else. With regard to [her] disclosure about the inadequacy of the TB testing of the JPS staff itself, his response was he "hoped they all died from TB."

Because of [her] good faith disclosures and reports of violations of laws, she was threatened, harassed, and ultimately fired . . . .

7

Tarrant County filed a plea to the jurisdiction, attaching to it Sheriff Anderson's affidavit; a copy of the notice of termination from Sheriff Anderson to McQuary, dated June 9, 2006, which set out her termination date as June 16, 2006, and informed her that rule 8.08 of the Sheriff's Department Civil Service Rules allowed her five working days to appeal to the sheriff; a copy of rule 8.08 of the Sheriff's Department Civil Service Rules;[1] a copy of McQuary's June 12, 2006 letter to Sheriff Anderson; a copy of an undated letter from McQuary to Sheriff Anderson; and a copy of a letter dated June 16, 2006, from Sheriff Anderson to McQuary, stating that the termination would stand and that she had exhausted her administrative appeals process. In its plea to the jurisdiction, Tarrant County argued that McQuary never mentioned anything related to whistleblowing activities, reports of misconduct, or opposition to anything illegal or allegedly illegal when appealing her termination to the sheriff.

---

[1] Civil Service Rule 8.08 states, in pertinent part,

(1) The employee on probation who receives . . . a notice of termination, may appeal to the Sheriff within five (5) working days.

(2) The Sheriff shall have ten (10) working days to review the appeal.

(3) The decision of the Sheriff shall be final in cases of original . . . probation.

8

In Sheriff Anderson's affidavit, he discussed McQuary's termination and the subsequent correspondence between himself and McQuary attached to the affidavit and the plea to the jurisdiction. In her June 12, 2006 letter, McQuary stated the following:

> I am aware newly hired employees of the Tarrant County Sheriff's Office serve a probationary period of one hundred and eighty (180) days. Chapter 8 of the Tarrant County Sheriff's Department Civil Service Rules regarding probation 8.06 reads: EVALUATION OF PROBATIONARY PERIOD. The probationer shall be evaluated at least twice during the probationary period by their immediate supervisor. One evaluation must be at the midpoint of the probationary period and a second evaluation must be not less than (10) days prior to the end of the probationary period.
>
> As of this day, June 12, 2006, I have not received any evaluations; written or oral. Pursuant to Chapter 8 of the Tarrant County Sheriff's Department Civil Service Rules my first evaluation should have been March 20, 2006 and the second evaluation should have been somewhere between June 9-19, 2006. My first day of employment is December 21, 2005. I received the termination of probationary employment on June 9, 2006. On January 25, 2006, Chief Knowles told me to disregard my job description. Within the next few days, I discussed this with Chief Key and he advised me to keep a record.
>
> The information included proves the non-compliance with Tarrant County Sheriff's Department Civil Service Rules.

In the second, undated letter to Sheriff Anderson, McQuary stated:

> It appears the probationary period was completed successfully and there is no documentation that exists showing otherwise. Medical liaison for the entire Sheriff's Department rather than just jail liaison will broaden the scope and duties of the position. I am happy to work with Chief Knowles and have no hard feelings. Considering

9

the recent progression, I request to continue employment with [the] Tarrant County Sheriff's Department as the medical liaison with your immediate supervision. With this arrangement, I will receive direction and communication and a revised job description.

With regard to McQuary's letters, Sheriff Anderson stated in his affidavit that he

understood the two documents to comprise a request for continued employment, but nothing in the documents suggested that she felt that she was being retaliated against on any basis whatsoever. Neither document made any reference to any reports of any law violations or reports of misconduct which she was claiming to have made prior to [his] issuance of the June 9, 2006 letter stating [his] intention to terminate her employment. She said nothing to [him] which gave [him] any reason to suspect that she was or had been claiming to be a whistleblower and [he] was not aware of her making claims of this nature to anyone else.

He also stated that at the end of McQuary's probationary period,

[he] concluded, based upon [his] personal observations and reports from other people who worked with her or observed her work in the jail, that [] McQuary was not the right fit for the new position and [he] made the decision to terminate her employment at the end of that probationary period.

In her affidavit attached to her response to Tarrant County's plea to the jurisdiction, McQuary included the information stated in her pleadings and added:

During my "appeal hearing" with Sheriff Dee Anderson, I attempted to explain in detail to the Sheriff the problems and issues I was having during my employment. Sheriff Anderson refused to listen to any such statements and just walked out and said he "would look into it" and that he was "late for a meeting." Also at this

10

"hearing" I attempted to give Sheriff Anderson notes that detailed issues with law violation at the jail in the past. I advised Sheriff Anderson that "I had no hard feelings toward Chief Knowles and that I was still willing to work with him." However, I did not wish to work directly under Chief Knowles and would prefer to be directly under Sheriff Anderson. Any time I tried to explain the particulars of my termination, including the retaliation for reports of law violations, I was immediately cut-off by Sheriff Anderson and told that he had to be somewhere else. My "appeal hearing" lasted approximately one minute; therefore I was not allowed to detail any of my complaints, including whistleblower complaints and retaliation complaints, at that time. I was purposefully prevented from voicing these issues and complaints by Sheriff Dee Anderson and other members of the Sheriff's Department, in an effort to thwart my legal rights.

After taking the matter under consideration, the trial court denied Tarrant County's plea to the jurisdiction, setting out the following reasons in a letter to the parties:

> The County stated in its presentation that the Civil Service Rules which govern appeals to the Sheriff do not require that the employee make a written appeal. I agree. An employee may make an oral appeal or supplement a written appeal orally.

> The written notice of appeal does not use the words *retaliation*, *whistleblower*[,] or state [McQuary] was fired because she complained about illegal or inappropriate activities. However, [McQuary's] written notice does allege that Chief Knowles told her to disregard her job description and that Chief Key, upon being told of this action by Chief Knowles, advised her to keep a record. The reason Chief Knowles allegedly told her to disregard her job description and Chief Key allegedly advised her to keep a record is not stated in the written notice of appeal. [] McQuary claims that she was going to orally supplement the notice when she had her appellate hearing with the Sheriff.

11

After [] McQuary filed her notice of appeal, she met with the Sheriff for the purpose of presenting her appeal of her termination. Based on the affidavits of Sheriff Anderson and [] McQuary, there is a factual dispute as to whether [] McQuary tried to inform the Sheriff of her alleged Whistleblower activities and the alleged retaliation. [] McQuary states in her affidavit that any attempt to discuss these topics was rebuffed and that the appeal hearing lasted less than a minute.

The clear tenor of the Sheriff's affidavit denies any such attempt when he states that "She said nothing to me which gave me any reason to suspect that she was or had been claiming to be a Whistleblower, and I was not aware of her making claims of this nature to anyone else."

I am of the opinion that the written allegations concerning Chief Knowles and Chief Key, plus the affidavits of [] McQuary and Sheriff Anderson, raise a fact issue as to whether or not [] McQuary was prevented from exhausting her administrative remedies.

## D. Analysis

### 1. Notice Requirement

We hold that McQuary was required to give reasonable notice to Tarrant County that she was asserting a Whistleblower Act claim. *See Robison*, 216 S.W.3d at 43; *Montgomery County Hosp. v. Smith*, 181 S.W.3d 844, 850 (Tex. App.—Beaumont 2005, no pet.).

"Notice" means "fair notice"—that is, notice of the employee's intent to appeal a disciplinary decision and notice of which decision or decisions the employee intends to appeal. *Smith*, 181 S.W.3d at 850 (holding that, in the

12

absence of a statutory standard or a standard created by an employee manual detailing the required contents of a public employee's notice of appeal, an employee must give fair notice of her decision to appeal and of the decision appealed from). In *Smith*, the employee alleged in her pleadings that she had been fired for reporting to a board member that the hospital district's CEO entered into a contract to sell a building owned by the hospital district. *Id*. at 845–46. The hospital district argued that her termination was based on her poor job performance and conduct unrelated to her retaliation claim. *Id.* at 846. After her termination, Smith sent the CEO an email requesting that he reconsider the amount of severance offered in exchange for a release of her claims.[2] *Id.* But she contended on appeal that the email constituted an appeal

---

[2] The email stated:

I hope that you had a good holiday with your family. I have spoken to Stacy regarding the release of claims document. She told me that you were standing by the number of 4,200 for my release. I am sincerely asking you to please reconsider. I know that you have a good heart and that is why I am even asking again. It would help my family out tremendously with the upcoming holidays and such to have the extra monies to keep us afloat for a little while. Again, I am sincerely asking to please, please reconsider. When I spoke to Greg he said that you were able to, but had to make the decision. I enjoyed working with you and the organization and am truly sorry for the way things worked out.

Please let me know so I may come to the District to finalize ever[y]thing.

13

of the decision to terminate her employment. *Id.* Upon reviewing the email, the court concluded that Smith failed to initiate the appeal process required for a Whistleblower Act claim because "no reasonably prudent employer could have been subjectively aware that Smith, by virtue of [her] e-mail, desired to invoke the [hospital district's] disciplinary appeal process with respect to her termination." *Id.* at 850; *cf. Gregg County v. Farrar*, 933 S.W.2d 769, 773–74 (Tex. App.—Austin 1996, writ denied) (holding that Farrar sufficiently presented notice of his Whistleblower Act claim during his grievance committee hearing).[3]

Simply asking the employer to reconsider termination by making alternative suggestions is insufficient to provide notice. *See Robison*, 216 S.W.3d at 44. In *Robison*, a nurse at a local state prison unit failed to give any

---

*Smith*, 181 S.W.3d at 846. She ultimately rejected the severance offer. *Id.*

[3] During the hearing, Farrar told the committee:

[O]n April 16th, Monday morning Commissioner said that if I find out who is doing this [reporting the commissioner's orders to dump barrels containing unknown substances] I will fire [th]em and then he retracted his statement and I will get [th]em fired . . . . And also on . . . July 16 it was repeated and I would like to know why and his statement "lack of loyalty to employees" that's here in the manual in a threatening way.

*Farrar*, 933 S.W.2d at 771, 774. Farrar's claim was ultimately dismissed for failure to comply with the then-existing exhaustion requirement under the statute. *Id*. at 776–77.

14

written notice of her intent to pursue a Whistleblower Act claim and failed to point to any evidence that she, at any time prior to filing suit, otherwise notified her employer that she believed her termination was in retaliation for reporting illegal activities at the unit to the Texas Labor Board. *Id.* at 39, 43. That is,

> [s]he unquestionably informed the hospital that she disagreed with their decision to eliminate her position, and she provided an alternative method for satisfying the budget cut [to which her employer had attributed her termination]. However, Robison's communications would not have provided any reasonable employer with notice that a potential whistleblower claim existed.

*Id*. at 43.

The legislature intended that the governmental entity—in this case, Tarrant County—be given an opportunity to correct its mistakes by resolving claims before the expense and effort of litigation ensue. *See Shilling,* 266 S.W.3d at 102; *Farrar*, 933 S.W.2d at 775. But to be able to do this, the governmental entity must be given reasonable notice that it has, in fact, made a mistake that can be resolved before a lawsuit is filed. *See Robison*, 216 S.W.3d at 43–44; *Smith*, 181 S.W.3d at 850. This goes hand-in-glove with the reasoning behind the exhaustion previously required under government code section 554.006(a):

> An eminently practical reason for requiring exhaustion of remedies is that the complaining party may be successful in vindicating his rights in the administrative process and never have to resort to court. Notions of administrative autonomy require further that the

15

agency be given first opportunity to discover and correct its own errors.

*Ender*, 30 S.W.3d at 594 (holding that employee satisfied statutory exhaustion requirement based on the description in his handwritten grievance, the relief he requested, and his "numerous reports [to various supervisors inside and outside his department] of the illegality" being applied to him, even though his grievance did not include the words "retaliation" or "discrimination"); *see also Robison*, 216 S.W.3d at 43 (distinguishing *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 317–18 (Tex. App.—Houston [14th Dist.] 2002, no pet.), *Upton County v. Brown*, 960 S.W.2d 808, 811–12 (Tex. App.—El Paso 1997, no pet.), and *Beiser v. Tomball Hosp. Auth*., 902 S.W.2d 721, 723 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (op. on reh'g), because in each of those cases, the employer received actual notice that its employee believed he or she had been fired in retaliation for reporting illegal activities). *But cf. Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 102–03 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting in dicta that the Whistleblower Act does not require that the employee use any particular words when filing his grievance or state that his appeal is based on the Whistleblower Act; however, the evidence relevant to jurisdiction suggested that UHCL had actual notice of Moore's whistleblower claims prior to his termination).

## 2. The Notice in Issue

We conclude from the evidence presented to the trial court that the communications between McQuary and the sheriff in no way put the sheriff on notice that a Whistleblower Act claim was being asserted. *See Smith*, 181 S.W.3d at 846, 850. In fact, the only complaints McQuary made in the documents she submitted to the sheriff were that she had not received any evaluations and that Chief Knowles had told her to disregard her job description. The overall subject and tenor of the communications was that she would like to continue her employment with the department, preferably directly under the sheriff's supervision, and that she had no hard feelings toward anyone. This constitutes no notice of a Whistleblower Act claim. *See Robison*, 216 S.W.3d at 44; *Smith*, 181 S.W.3d at 846, 850.

## 3. Prevention

McQuary complains that, if notice was required, she was excused from that requirement because her efforts to give notice were thwarted. She refers us to *Rivera* in support of this argument. *Rivera* states, in pertinent part,

> If the attempts by an employee to comply with the entity's grievance procedures were effectively thwarted by the entity's refusal to meet, the purpose of the statute would be frustrated, particularly if the entity was allowed to proclaim that the employee did not exhaust her administrative remedies under the Act. Fort Bend ISD cannot, on the one hand, refuse to meet with an

employee as required by the policy, and then, on the other hand, complain that the employee failed to follow the policy.

93 S.W.3d at 320.

In *Rivera*, the Fort Bend ISD principal, the source of Rivera's complaint and Rivera's direct supervisor, refused to meet with Rivera after Rivera reported to her that the principal's falsification of the enrollment documents for the principal's niece and another employee's child violated the law. *Id*. at 317–18. This meeting was required by the grievance procedure, and the procedure was silent as to "what to do if one's 'Level One' supervisor refuses to grant the employee a meeting." *Id*. at 317 & n.2, 320. Further, the human resources department initially did not provide guidance and advised her to quit.[4] *Id*. at 318, 320. As noted by the court, "a terminated employee's claims will not be barred by the statutory requisites of the [W]histle-[B]lower [A]ct" if the grievance policy is unclear. *Id*. at 320–21.

The facts in *Rivera* are not the facts before us. McQuary was required to communicate her appeal to the sheriff and did so. Those communications were not restricted in any way. That is, rule 8.08, under which McQuary could

---

[4] "[W]hen Human Resources finally did provide some guidance to Rivera's daughter, even that advice-to proceed to 'Level Two'-Fort Bend ISD admitted was incorrect, and thus, was entirely unclear." *Rivera*, 93 S.W.3d at 320.

18

appeal the original termination decision, does not specify any particular form or format for either her appeal or the sheriff's decision, nor is there any mention of whether any sort of hearing or face-to-face meeting should be held. All means of communication, therefore, were available to McQuary to convey the belief that her termination was related to her alleged reports of violations of the law. Thus, when she felt that the sheriff did not effectively meet with her in their face-to-face meeting after he reviewed her written communications, nothing kept McQuary from requesting another face-to-face meeting or from communicating further in writing. Under these circumstances, we cannot say that she was thwarted in her efforts to follow the grievance procedure. Accordingly, we sustain Tarrant County's sole issue.

## IV. Conclusion

Having determined that the trial court erred by denying the plea to the jurisdiction, we reverse the trial court's order and render judgment granting Tarrant County's plea to the jurisdiction.

BOB MCCOY
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: April 1, 2010