**COURT OF APPEALS**
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
**NO. 02-10-00052-CV**


TARRANT REGIONAL                                           APPELLANT
WATER DISTRICT

V.

TAMARA VILLANUEVA                                          APPELLEE

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

In two issues, Appellant Tarrant Regional Water District (Tarrant) appeals the denial of its partial plea to the jurisdiction, asking this court to determine whether Chapter 21[1] of the Texas Labor Code should be read to automatically

---

[1]Formerly the Texas Commission on Human Rights Act (TCHRA). *See* Act of June 25, 1983, 68th Leg., 1st C.S., ch. 7, 1983 Tex. Gen. Laws 37, 37–57, *recodified by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen.

incorporate the provisions of the federal Lilly Ledbetter Fair Pay Act of 2009 (the Ledbetter Act).[2]  We reverse and remand.

## II.  Factual and Procedural History

Appellee Tamara Villanueva sued Tarrant, her former employer, for gender-based employment discrimination and retaliation under sections 21.051 and 21.055 of the Texas Labor Code.  *See* Tex. Lab. Code Ann. §§ 21.051, 21.055 (Vernon 2006).  Tarrant filed a partial plea to the jurisdiction on Villanueva's gender-based discrimination claim, arguing that Villanueva failed to timely file her administrative complaint with the Texas Workforce Commission Civil Rights Division (TWCCRD).  The trial court denied Tarrant's partial plea to the jurisdiction, and this interlocutory appeal followed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008).

## III.  Plea to the Jurisdiction

### A.  Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit.  *Tarrant County v. McQuary*, 310 S.W.3d 170, 172 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).  The plea challenges the trial court's subject matter jurisdiction.  *Id.*  Whether the trial court

---

Laws 987, 991–1004 (current version at Tex. Lab. Code Ann. §§ 21.001–.306 (Vernon 2006 & Supp. 2010).

[2]Pub. L. 111-2, § 3, 123 Stat. 5 (2009).

has subject matter jurisdiction is a question of law that we review de novo. *Id.* (citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction. *Id.* at 173 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in the plaintiff's favor, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The pleadings relevant to a review of a plea to the jurisdiction include the live petition, the plea to the jurisdiction, and the response to the plea to the jurisdiction. *Tarrant County*, 310 S.W.3d at 173.

## B. Petition, Plea, and Response

### 1. Villanueva's Petition

Villanueva made the following allegations in her petition: She started working for Tarrant as a buyer in its purchasing department in 2000. Tarrant promoted her to a senior buyer in 2005, but it terminated her employment in July 2006. In August 2006, Tarrant assigned David Owen to be a senior buyer in the purchasing department. Owen became Villanueva's supervisor when Tarrant rehired her in October 2006 as a contract administrator. Upon her rehiring, Villanueva trained Owen to perform the senior buyer responsibilities that she used to have, and she continued to perform the duties of a senior buyer.

3

Owen's initial annual salary was $45,000, but after a three percent raise in February 2007 and an additional salary increase in August 2007, his annual salary as of October 2008 amounted to $52,500. For performing the same functions as Owen, even though her title was "contract administrator," Villanueva earned an annual salary of approximately $40,000. Although she requested a five percent raise in September 2007, she received a four percent raise in October 2007, increasing her annual salary to $41,600.

In November 2007, Villanueva complained to her general manager about gender-based pay discrimination. Her complaint led to her removal from a major project, to removal of her most important job duties, and to her assignment to basic clerical tasks. Villanueva also continued to perform buyer duties, although Owen took credit for her work.

In March 2008, Tarrant reassigned Villanueva to a Buyer II position and required her to perform manual labor in a warehouse. On May 25, 2008, due to her poor physical condition, she requested reinstatement as a contract administrator. Tarrant discharged her that day.

On August 15, 2008—within 180 days of receiving her last paycheck—Villanueva filed an employment discrimination charge against Tarrant with the federal Equal Employment Opportunity Commission (EEOC) and with TWCCRD. On April 21, 2009, TWCCRD issued notice of Villanueva's right to file a civil action, and Villanueva filed the instant suit on May 7, 2009.

4

### 2. Tarrant's Plea to the Jurisdiction

Tarrant did not dispute the May 2008 discharge date or the dates on which Villanueva filed the discrimination charge with the EEOC and TWCCRD or this lawsuit. However, it disputed that the trial court had jurisdiction over Villanueva's pay discrimination claim because she failed to file her administrative complaint within the required 180-day period after Tarrant committed the alleged unlawful employment practice.

Further, Tarrant alleged that when it denied Villanueva's request for a five percent raise and instead gave her a four percent raise, Villanueva hired an attorney who threatened Tarrant with a lawsuit for gender-based pay discrimination in a letter dated November 8, 2007. Tarrant attached to its plea to the jurisdiction a portion of Villanueva's deposition in which she agreed that in October 2007, when she did not receive the five percent raise to which she felt entitled, she felt that she was being discriminated against on the basis of her gender. Villanueva also admitted that in September 2007, after being informed that she would not receive a five percent raise, she started emailing portions of Tarrant's employment policies from her work email account to her personal email account because she was thinking about a lawsuit.

### 3. Villanueva's Response

In her response to Tarrant's plea, Villanueva argued that recent legislation and case law had "clarified and settled all issues surrounding the timeliness of discrimination charges based on unfair compensation." Specifically, she

5

contended that the Ledbetter Act, which Congress passed in January 2009 and which amended Title VII of the Civil Rights Act of 1964, applied to make her claim timely.

## C. Chapter 21 and the Lilly Ledbetter Fair Pay Act

### 1. Statutory Construction

We review statutory construction de novo, and in construing statutes, we ascertain and give effect to the legislature's intent as expressed by the statute's language. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. *Id.* (citing Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005)); *see also Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) ("Where text is clear, text is determinative of [the legislature's] intent."). Furthermore, we consider the object sought to be attained, the circumstances under which the statute was enacted, its legislative history, and common law or former statutory provisions, including laws on the same or similar subjects, among other factors. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 2005). In interpreting a statute, a court "shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." *Id.* § 312.005 (Vernon 2005). And "[u]nless expressly provided otherwise, a reference to any portion of a statute, rule, or regulation applies to all reenactments, revisions, or amendments of the statute, rule, or regulation." *Id.* § 312.008 (Vernon 2005). Finally, we must read the statute as a whole and not

6

just isolated portions. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Boenig v. StarnAir, Inc.*, 283 S.W.3d 444, 447 (Tex. App.—Fort Worth 2009, no pet.); *see also Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 253 (Tex. App.—Dallas 2005, no pet.) ("We determine legislative intent from the entire act and not just its isolated portions.").

### 2. Chapter 21

Chapter 21 "establishes a 'comprehensive administrative review system,' under which the 'exhaustion of administrative remedies is a mandatory prerequisite to filing a civil action alleging violations of the [T]CHRA.'" *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 446 (Tex. 2004) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485, 486 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010)).[3] Chapter 21 "was enacted to address the specific evil of discrimination

---

[3]In *In re United Services Automobile Ass'n*, the Texas Supreme Court held that the two-year period for filing suit under labor code section 21.256 is mandatory but not jurisdictional, overruling *Schroeder* to the extent it held otherwise. *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 310. The court did not address *Schroeder*'s other holding—that failure to file a complaint and to pursue administrative remedies within the 180-day time frame creates a jurisdictional bar. *See id.; Schroeder*, 813 S.W.2d at 488; *see also City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008) (stating that noncompliance with Chapter 21's unique and comprehensive provisions for external administrative review, alternative dispute resolution, and exhaustion of administrative remedies "are designed to favor conciliation over litigation, and noncompliance deprives courts of subject-matter jurisdiction"); *Lueck v. State*, No. 03-07-00497-CV, 2010 WL 2789543, at *8 (Tex. App.—Austin July 16, 2010, no pet.) (stating that the supreme court's reasons for continuing to characterize Chapter 21 as a statutory scheme that requires exhaustion of administrative remedies "are as valid today as they were when *Schroeder* was decided"). Under Chapter 21's statutory

7

and retaliation in the workplace." *City of Waco*, 259 S.W.3d at 153. As it is modeled after federal law, with the purpose of executing the policies set forth in Title VII, "federal case law may be cited as authority in cases relating to the Texas Act." *Hoffmann-La Roche Inc.*, 144 S.W.3d at 445–46; *see also* Tex. Lab. Code Ann. § 21.001(1); *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) ("By adopting the Act, the Legislature 'intended to correlate state law with federal law in employment discrimination cases.'"). *But see Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001) ("The relevant parts of the TCHRA are patterned after Title VII . . . [t]hus, we would ordinarily look to federal precedents for interpretative guidance to meet the legislative mandate . . . [;] [h]owever, because the federal courts are closely divided on the issue, we follow the plain meaning of Texas Labor Code section 21.125.").

There are two main provisions of Chapter 21 at issue here. Section 21.001 states that there are eight general purposes of Chapter 21, including to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab. Code Ann. § 21.001(1). Section 21.202(a) provides that a complaint must be filed "not later than the 180th day after the date the alleged unlawful employment practice occurred." *Id.* § 21.202(a).

---

scheme, "a late filing of an administrative complaint has exactly the same effect as no filing at all, because an untimely complaint is not routed through the administrative process as the legislature intended it to be." *Lueck*, 2010 WL 2789543, at *8.

### a. "Occurred"

Whether the trial court should have granted Tarrant's partial plea to the jurisdiction hinges on how we construe the term "occurred" in labor code section 21.202. *See id.*

Chapter 21 of the Texas Labor Code does not define "occurred." *See id.* § 21.002 (Vernon 2006). Texas courts, relying on federal court interpretations of Title VII, have defined "occurred" as when the employee is informed of the allegedly discriminatory employment decision. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492–93 (Tex. 1996) ("Because one purpose of the Commission on Human Rights Act is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority."); *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 83 (Tex. App.—Fort Worth 2003, pet. denied). Our state case law has determined that each paycheck is not a new occurrence of discrimination or part of a continuing violation that would give an employee a new 180-day limitations period at the issuance of each paycheck. *See Cooper-Day*, 121 S.W.3d at 84 ("Pay discrimination does not continue to occur until the last allegedly discriminatory paycheck is received unless the employer has implemented a facially invalid payment system and continues to pay under that system or the unequal pay is part of, or a repetition of, a past employment violation.").

Prior to 2009, like labor code section 21.202(a), 42 U.S.C.A. § 2000e-5(e)(1) (West 2003) stated, "A charge under this section shall be filed within one

9

hundred and eighty days after the alleged unlawful employment practice occurred," but it did not define "occurred" in the context of discrimination in compensation. Civil Rights Act of 1991, ch. 22, § 107, 105 Stat. 1071 (1991) (current version at 42 U.S.C.A. § 2000e-5(e)(1)(3)(A) (West Supp. 2010)). And, like our state case law, federal case law required that a person file his or her claim based on discriminatory compensation within 180 days of the time of the discriminatory act; that is, within 180 days of the date the employee was informed of the complained-of salary change. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 621, 628–29, 127 S. Ct. 2162, 2165, 2169 (2007) (explaining that "Ledbetter should have filed an EEOC charge within 180 days after each allegedly discriminatory pay *decision* was made and communicated to her," and that because she did not do so, "the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming that prior failure" (emphasis added)). The Supreme Court's underlying rationale was essentially to avoid the imposition of strict liability on employers for routine, administrative acts; that is, only the initial pay decision was discriminatory—the issuance of paychecks based on that initial decision were not.[4] *Id.* at 629–30, 127 S. Ct. at 2170 ("The EEOC filing deadline 'protect[s]

---

[4]The Supreme Court stated:

> Ledbetter's attempt to take the intent associated with the prior pay decisions and shift it to the 1998 pay decision is unsound. It would shift intent from one act (the act that consummates the discriminatory employment practice) to a later act that was not

10

employers from the burden of defending claims arising from employment decisions that are long past.'" (internal citation omitted)).

However, as amended by the Ledbetter Act, 42 U.S.C.A. § 2000e-5(e)(3)(A) defines "occurs" as:

> when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or *when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice*.

42 U.S.C.A. § 2000e-5(e)(3)(A) (emphasis added). That is, responding to the Supreme Court's 2007 ruling that each issuance of a paycheck did not result in a continuing discriminatory violation, Congress codified the "continuing violation" doctrine in subsection (3)(A). *See Prairie View A & M Univ. v. Chatha*, 317 S.W.3d 402, 406–07 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (comparing amendment to decision in *Ledbetter*, 550 U.S. at 621, 127 S. Ct. at 2165); *see also Cooper-Day*, 121 S.W.3d at 86–87 (explaining "continuing violation" theory). The Ledbetter Act applies retroactively to all Title VII claims of discrimination pending on or after May 28, 2007. *See Chatha*, 317 S.W.3d at 407 (citing the Ledbetter Act). Therefore, if the provisions of the Ledbetter Act have been

---

performed with bias or discriminatory motive. The effect of this shift would be to impose liability in the absence of the requisite intent.

*Id.* at 629, 127 S. Ct. at 2170.

11

automatically incorporated into Chapter 21, then the trial court had jurisdiction over Villanueva's claim.

### b. Amendment Versus Automatic Incorporation

Tarrant contends that absent an express amendment to Chapter 21, the Ledbetter Act does not apply to Texas state discrimination law. Specifically, Tarrant complains,

> [T]he Texas Supreme Court has never held that a provision of the federal law with no express analogue in the state statute must be incorporated by reference into the TCHRA simply because it is contained in the federal statute. Instead, the supreme court has relied on federal court and federal administrative interpretations of Title VII as guidance where the TCHRA provision before it is mirrored by a provision in Title VII.

Tarrant argues that because Title VII and Chapter 21 are no longer identical, the federal statutory language defining "occurred" in the Ledbetter Act does not and will not apply unless the legislature amends Chapter 21 to include it.

Only one other Texas court has addressed whether the Ledbetter Act's provisions are automatically incorporated into Chapter 21. *See Chatha*, 317 S.W.3d at 407–09. In *Chatha*, a professor received a promotion in 2004 but did not file her EEOC complaint alleging paycheck discrimination until 2006. *Id.* at 404–05. The university filed a plea to the jurisdiction, asserting that Chatha failed to timely file her complaint because she filed it more than 180 days after her 2004 promotion. *Id*. The court reasoned that the Ledbetter Act's definition describing when an unlawful practice occurs in Title VII should be applied to the Chapter 21 claim because (1) Chapter 21's express policy is to execute Title VII's

policies, (2) two federal district courts in Texas have held that Texas courts would apply the Ledbetter Act to Chapter 21 and Texas courts look to the federal courts' interpretation of Title VII for guidance in defining terms, and (3) the university's arguments to the contrary were unpersuasive.[5] *Id.* at 405, 407–09.

The *Chatha* court relied in part on two federal district court opinions, *Klebe v. University of Texas System (Klebe II)*, 649 F. Supp. 2d 568 (W.D. Tex. 2009), and *Lohn v. Morgan Stanley DW, Inc.*, 652 F. Supp. 2d 812 (S.D. Tex. 2009). *Id.* at 408–09. In *Klebe II*, the federal district court concluded that the Austin Court of Appeals erred in *Klebe v. University of Texas System (Klebe I)*, No. 03-05-00527-CV, 2007 WL 2214344 (Tex. App.—Austin July 31, 2007, no pet.) (mem. op.), by relying on *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996), to support its conclusion that the limitation period began to run when the employee was informed of the allegedly discriminatory employment decision. *Klebe II*, 649 F. Supp. 2d at 570; *see Klebe I,* 2007 WL 2214344, at *3. The Texas Supreme Court in *Specialty Retailers*, in turn, relied on *Delaware State*

---

[5]The university argued that Chapter 21 is not intended to be identical to Title VII, that it does not automatically incorporate amendments to Title VII, and that the bill sponsored in the Texas legislature after the Ledbetter Act was signed into law, which would have incorporated language similar to the Ledbetter Act, never made it beyond the business and commerce committee. *Id*. at 408–09. The court acknowledged that while Chapter 21 and Title VII are not identical, the Texas Supreme Court has historically looked to the federal courts' interpretation for determining when an unlawful employment practice occurs because Chapter 21 does not define that term and because Chapter 21's policy is to execute Title VII's policies. *Id.* at 408. The court refused to "resort to rules of construction" or to speculate about why the Texas bill did not pass. *Id*. at 408–09.

13

*College v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980), *Ledbetter*'s predecessor, in stating that the limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty Retailers*, 933 S.W.2d at 492–93; *see Ledbetter*, 550 U.S. at 626, 127 S. Ct. at 2168 (discussing *Ricks*).

The *Klebe II* court held that "it seems evident that Texas courts would look to the Ledbetter Act, which amended Title VII, in deciding when a discrimination claim under TCHRA accrues" because the Austin court looked to federal precedent (via Texas Supreme Court precedent) in *Klebe I*, and because of the language of section 21.001(1) with regard to the statute's express purpose. *Klebe II*, 649 F. Supp. 2d at 570–71. In *Lohn*, faced with an argument very similar to Tarrant's,[6] the federal district court agreed with the *Klebe II* court's reasoning. *See Lohn*, 652 F. Supp. 2d at 829.

To the contrary, we agree with Tarrant. While it is true that the "general purposes" of Chapter 21 are to "provide for the execution of the policies of Title VII . . . *and its subsequent amendments*," nothing in the plain language of section 21.001 states that the statute *automatically incorporates* Title VII's subsequent amendments into itself. *See* Tex. Lab. Code Ann. § 21.001(1) (emphasis

---

[6]The defendant employer in *Lohn* argued that the Ledbetter Act, "which explicitly amended Title VII of the Civil Rights Act, did not automatically amend the TCHRA and that, until the Texas legislature passes an analogous statute, it would be legally erroneous to apply the [Ledbetter Act] to the TCHRA." 652 F. Supp. 2d at 828.

14

added). Nor does section 21.202 include any automatic incorporation language. *See id.* § 21.202. And although section 312.008 of the government code mandates that a reference to any portion of a statute, rule, or regulation applies to all amendments of the statute, rule, or regulation, section 21.001 does not directly refer to a "statute, rule, or regulation." *Cf.* Tex. Gov't Code Ann. § 312.008. Rather, section 21.001 makes express reference to the *policies* underlying Title VII and its subsequent amendments.

The Ledbetter Act did not change Title VII's policies: To assure equality of employment opportunities; to eliminate those discriminatory practices and devices that have fostered job environments stratified on the basis of race, color, religion, sex, or national origin; and to provide "make-whole relief" via exhaustion of administrative remedies before judicial review of administrative action to those who have actually suffered from illegal discrimination. *See Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009) (discussing disparate impact); *Int'l Union v, Johnson Controls, Inc.,* 499 U.S. 187, 210, 111 S. Ct. 1196, 1209 (1991) (discussing sex discrimination); *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 580, 104 S. Ct. 2576, 2588–89 (1984) (discussing "make-whole" relief); *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 348, 97 S. Ct. 1843, 1861 (1977) (discussing racial discrimination); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010) (stating that Title VII's policies "include administrative procedures involving informal conference, conciliation and persuasion, as well as judicial review of administrative action"). Therefore, as currently written, Chapter

21 continues to provide for the execution of Title VII's policies, albeit on a timetable different from the one now followed under the federal statute.[7] But differences between Title VII and Chapter 21 are not unusual. *Compare* 42 U.S.C.A. § 2000e-5(f)(1) (setting out a ninety-day period to file a civil action in an employment discrimination suit after receiving notice of the right to file a civil action), *with* Tex. Lab. Code Ann. § 21.254 (Vernon 2006) (setting out a sixty-day period to file a civil action in an employment discrimination suit after receiving notice of the right to file a civil action), *and compare* 42 U.S.C.A. § 2000e-5(g)(1) (stating that if the court finds that a respondent has intentionally engaged in an unlawful employment practice and orders back pay, interim earnings or amounts earnable with reasonable diligence by the person discriminated against shall operate to reduce otherwise allowable back pay), *with* Tex. Lab. Code Ann. § 21.258 (Vernon 2006) (stating that workers' compensation benefits and unemployment compensation benefits, as well as interim earnings, operate to reduce the back pay otherwise allowable).

---

[7]In short, to us, this appears to be more like a procedural rather than substantive issue. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1442 (2010) (noting that the Court has long held that procedural rules are those that regulate "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them" (internal citation omitted)); *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999) ("Statutes of limitations are procedural."). *But cf. Intevep, S.A. Research & Tech. Support Establishment v. Sena*, 41 S.W.3d 391, 394 (Tex. App.—Dallas 2001, no pet.) (noting that when a statute creates a right of action and incorporates an express limitation upon the time within which suit may be brought, the statute of limitations is considered substantive).

16

Furthermore, when Congress has amended provisions of the Americans with Disabilities Act (ADA), our legislature has amended Chapter 21 to contain similar language when it wanted to incorporate the federal amendments.[8] *See, e.g., Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 376–78 (Tex. 2004) (setting out Chapter 21's history and noting that, in 1989, the legislature purposely adopted federal statutory language with regard to the definition of disability and, in 1993, the legislature amended TCHRA—Chapter 21's predecessor—to bring it into compliance with the Civil Rights Act of 1991 and the ADA).

While we are guided by analogous federal statutes and the cases interpreting them, we see no reason to write automatic incorporation language into Chapter 21 when our legislature has shown that it knows how to amend the chapter when it wants to include specific federal provisions. *See id.*; *see also Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (noting an additional difference between Chapter 21 and Title VII with regard to the required proof of an employer's motivation for an unlawful employment practice); *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 847 (Tex. 2009) ("The judiciary's task is not to refine legislative

---

[8]Another of labor code section 21.001's "general purposes" is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." Tex. Lab. Code Ann. § 21.001(3).

choices . . . [it] is to interpret legislation as it is written."). Therefore, we sustain Tarrant's first issue.

### c. "Occurred" Under Pre-Ledbetter Act State Law

Because we conclude that our state statute does not automatically incorporate the provisions of the Ledbetter Act, we continue to follow the existing body of Texas law interpreting "occurred" under Chapter 21: The 180-day limitations period for an employment discrimination complaint under Chapter 21 begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *See Cooper-Day*, 121 S.W.3d at 83 (citing *Specialty Retailers*, 933 S.W.2d at 493). Because it is apparent from the record that Villanueva was aware of the allegedly discriminatory employment decision more than 180 days before she filed her complaint, her complaint was untimely. We sustain Tarrant's second issue.

## IV. Conclusion

Having sustained both of Tarrant's issues, we reverse the trial court's denial of Tarrant's partial plea to the jurisdiction and remand this case for further proceedings.

BOB MCCOY
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DELIVERED: December 23, 2010